UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHARLES HARRISON BARBEE , | NOS.   CR-96-0258-WFN-1 |
| Movant, | CV-13-0025-WFN |
| -vs- | ORDER DENYING DEFENDANT'S |
| UNITED STATES OF AMERICA, | MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE |
| Respondent. | UNDER 28 U.S.C. § 2255 |

Before the Court is Mr. Barbee's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 363), to which the Government has responded (ECF No. 368), and Mr. Barbee has replied (ECF No. 369).  The Court has reviewed the file, the trial transcript, the Court's trial notes, and the briefing on the Motion, as well as recalled its own memory of the trial. *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989) (reviewing judge may consider his own notes and memory of trial).  For the reasons stated below, the Motion is denied.

**BACKGROUND**

Mr. Barbee was indicted on December 5, 1996 (ECF No. 22).  Mr. Barbee and his co-Defendants were charged with twelve counts, including conspiracy to destroy a newspaper office and a Planned Parenthood office, two counts of bank robbery with the use of dangerous weapons, use and carrying of a destructive device during and in relation to crimes of violence, transportation of stolen vehicles across state lines, and possession of unregistered firearms in violation of 18 U.S.C. § 844(i), 924(c)(1), 2113(a) and (d), 2312 and 26 U.S.C. § 5861(d).

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 1

A first trial commenced on March 3, 1997. On April 4, 1997, Mr. Barbee was found guilty of Counts 1, 10, 11 and 12 and no decision was reached by the jury on Counts 2 through 9 (ECF No. 129). A mistrial was declared on April 8, 1997 on Counts 2 through 9 (ECF No. 132). A Superseding Indictment was filed April 9, 1997 (ECF No. 135).

A second trial commenced on June 19, 1997. The jury returned guilty verdicts on Counts 2 through 9 on July 23, 1997 (ECF No. 240). Mr. Barbee was sentenced to life imprisonment on November 4, 1997. *See* Judgment filed 11/5/1997 (ECF No. 286). During the proceedings, Mr. Barbee filed an interlocutory appeal of the Court's Order denying his Motion to Dismiss for violation of double jeopardy. *See* Order filed 6/5/1997, ECF No. 188. The Ninth Circuit affirmed in a Mandate filed February 2, 1998 (ECF No. 326). Mr. Barbee also appealed his conviction and sentence. The Ninth Circuit affirmed in a Mandate filed June 21, 1999 (ECF No. 336).

On December 4, 2006, Mr. Barbee filed a Motion Pursuant to Federal Rule of Civil Procedure 60(b)(4) (ECF No. 337). The Motion sought to vacate his criminal judgment as void. Despite Mr. Barbee's claim to the contrary, the Court did not recharacterize or construe his Rule 60(b)(4) Motion as a 28 U.S.C. § 2255 motion. Instead, the Court held that Mr. Barbee's exclusive remedy was a 28 U.S.C. § 2255 motion and denied the 60(b) Motion (ECF No. 341). On January 12, 2007, Mr. Barbee appealed the Court's denial of his Rule 60(b) Motion (ECF No. 343). The Ninth Circuit affirmed in a Mandate filed September 30, 2008.

## DISCUSSION

**A.    The Motion Under Rule 33 is Untimely.**

Mr. Barbee filed his present Motion almost fifteen years after his convictions. In his Motion, Mr. Barbee presents 23 claims. Each claim stems from an allegedly "new discovery of facts" through a statement received from one of the trial witnesses who testified against him: Loren Berry, brother of co-Defendant Robert Berry (ECF No. 363 at 24). Mr. Barbee states that he received Loren Berry's statement sometime in late December of 2012.

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 2

Mr. Barbee alleges that the Government conspired with witness Loren Berry to have him give false testimony against Mr. Barbee and his co-Defendants, that in return, the Government promised to intervene in Loren Berry's state criminal charges and secretly pay him. Mr. Barbee further alleges that the Government knowingly solicited and failed to correct false testimony, disguised witness benefits, committed prosecutorial misconduct, interfered with Mr. Barbee's right to interview and cross-examine Berry, breached ethical and constitutional obligations, and corrupted the trial's integrity. Mr. Barbee contends that the Government violated *Brady*, *Agurs, Giglio, Napue,* and *Alcorta*. Additionally, Mr. Barbee claims that his Motion is timely under § 2255(f)(2) or (4).

The Court begins by noting that the lynchpin of each of Mr. Barbee's 23 claims is the alleged newly discovered evidence derived from Loren Berry's affidavit. As the Government points out, and the Ninth Circuit has stated in Mr. Barbee's co-Defendant's appeal, new evidence-based claims are not cognizable under § 2255. Rather, "a motion under § 2255 that raises evidence-based claims should be treated as a motion for a new trial." *United States v. Jackson*, 209 F.3d 1103 (9th Cir. 2000). "The proper device for such a claim is Federal Rule of Criminal Procedure 33, which allows a prisoner to move for a new trial based on newly discovered evidence. Fed. R. Crim. P. 33(b)(1)." *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010). However, Rule 33 has a three year time limit. In its response to the current Motion, the Government objects to the timeliness of Mr. Barbee's newly discovered evidence claims. In an abundance of caution, after objecting to the timeliness of Mr. Barbee's Motion pursuant to Rule 33, the Government performed a Rule 33 analysis of Mr. Barbee's claims pursuant to *Jackson*, and then a *Brady* analysis of Mr. Barbee's claims. The Court concludes that the Rule 33 analysis is clearly unnecessary given the untimeliness of Mr. Barbee's claims, the Government's objection on untimeliness grounds, and the Ninth Circuit's decision in *Berry*. *Id.* at 1039 ("A district court may treat a § 2255 motion as a Rule 33 motion for a new trial. To do so, the § 2255 motion must be timely under the

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 3

1  provisions of Rule 33.").  Given that Mr. Barbee's claims are new, evidence-based claims,
2  objected to as untimely, and that they are beyond the three year time limit, the Court denies
3  his Motion.

4  **B.    Assuming, *Arguendo*, Mr. Barbee Has Properly Alleged § 2255 Claims, They Are**
5  **Untimely.**

6          The Court also notes that Mr. Barbee attempts to cloak his newly discovered evidence
7  claims in independent constitutional violations, assumably in order to escape the three-year
8  limitation under Rule 33.  As stated *supra*, Mr. Barbee claims that his Motion is timely under
9  § 2255(f)(2) or (4).  Assuming, *arguendo*, that Mr. Barbee has properly alleged § 2255
10 claims, they are untimely.  A "§ 2255 motion is timely if it was filed within a year of when
11 the facts supporting the claim or claims presented could have been discovered through the
12 exercise of due diligence."  *United States v. Denny*, 694 F.3d 1185, 1189 (10th Cir. 2012).
13  In considering whether Mr. Barbee acted diligently, the following is significant:  First,
14 Loren Berry has made similar statements in the past.  Specifically, Loren Berry signed an
15 affidavit in 2005, in which he claimed that the Government promised him compensation
16 after the verdict (CR -96-259-WFN, ECF No. 347).  Second, co-Defendant Robert Berry
17 filed the affidavit into the docket in 2007, claiming it was evidence of a *Brady* violation
18 (CR-96-259-WFN, ECF No. 347).  Third, in October of 2010, the Ninth Circuit noted Robert
19 Berry's *Brady* claim that was derived from the Loren Berry affidavit in its published opinion.[1]
20 Fourth, on February 16, 2011, Robert Berry again claimed that Loren Berry's statements
21 were evidence of a secret deal with the Government in violation of *Brady, Giglio,* and *Napue*

22 _____

23          [1]The Ninth Circuit noted the claim in a footnote, stating in part, "[i]n addition to the
24 above argument, Berry claims on appeal that the government committed a *Brady* violation
25 when it failed to disclose that Berry's brother, Loren Berry, was compensated for the
26 testimony he gave at [Defendants'] trial."

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 4

(ECF No. 412 at 55-57). Despite these repeated claims in his co-Defendant's docket, Mr. Barbee waited more than a year after each event and did not act until January 4, 2013. The Court concludes that at a minimum, due diligence requires that Mr. Barbee review his case docket and the dockets of his fellow co-Defendants. Had Mr. Barbee done so, he would have been aware in 2007 of the predicate of Loren Berry's claims and been able to file a timely Motion.

**C.   Assuming, *Arguendo*, Mr. Barbee Has Properly Alleged Timely § 2255 Claims, He Is Not Entitled to Relief.**

Assuming, *arguendo* that Mr. Barbee was successful in cloaking his newly discovered evidence claims in independent constitutional violations and that he did so in a timely fashion, he still would not be entitled to relief pursuant to *Brady* or *Napue*.

> In determining whether there has been a Brady violation, [a court considers] whether the evidence was: (1) favorable to the accused, (2) suppressed by the government and (3) material to the guilt or innocence of the defendant. Evidence is favorable if it is exculpatory or impeaches a prosecution witness, and suppression occurs when favorable evidence known to police or the prosecution is not disclosed, either willfully or inadvertently. Evidence is material when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability of a different result exists when the government's evidentiary suppression undermines confidence in the outcome of the trial. If the petitioner establishes all three elements, the challenged conviction or sentence must be set aside.

*United States v. Lopez*, 577 F.3d 1053, 1059 (9th Cir. 2009) (internal citations and quotations omitted). "A claim under *Napue* will succeed when (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *Jackson v. Brown*, 513 F.3d 1057, 1071-1072 (9th Cir. Cal. 2008) (internal citations and quotations omitted).

> A jury's finding should be overturned as a result of *Brady* and *Napue* violations if and only if those violations are material. The fundamental question in the materiality analysis is whether, despite the prosecution's errors, the defendant received a trial resulting in a verdict worthy of confidence. Because each

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 5

additional *Napue* and *Brady* violation further undermines our confidence in the jury's decision, we analyze the errors collectively.

The materiality analysis proceeds differently for *Brady* and *Napue* claims. Whereas a *Brady* violation is material when there is a reasonable probability that the result of the proceeding would have been different, a *Napue* violation requires that the conviction be set aside whenever there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. We have gone so far as to say that if it is established that the government knowingly permitted the introduction of false testimony reversal is virtually automatic. Nonetheless, *Napue* does not create a per se rule of reversal.

Although we must analyze *Brady* and *Napue* violations collectively, the difference in the materiality standards poses an analytical challenge. The *Napue* and *Brady* errors cannot all be collectively analyzed under *Napue's* reasonable likelihood standard, as that would overweight the *Brady* violations. On the other hand, they cannot be considered in two separate groups, as that would fail to capture their combined effect on our confidence in the jury's decision. To resolve this conflict, we first consider the *Napue* violations collectively and ask whether there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. If so, habeas relief must be granted. However, if the *Napue* errors are not material standing alone, we consider all of the *Napue* and *Brady* violations collectively and ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. At both stages, we must ask whether the defendant received a trial resulting in a verdict worthy of confidence.

*Jackson v. Brown*, 513 F.3d 1057, 1075-1076 (9th Cir. Cal. 2008) (internal quotations and citations omitted).[2]

As the Government states, the crux of the analysis is whether Mr. Barbee's claims, if believed, would be material. The Government contends that Mr. Barbee's claims are immaterial because Mr. Barbee fails to establish that had the evidence been

---

[2]Barbee also brings claims under *Giglio*. The analysis under *Giglio* is the same as *Brady*. *See United States v. Kohring*, 637 F.3d 895, 901 (9th Cir. 2011). Similarly, Mr. Barbee also brings claims under *Agurs* and *Alcorta*. The materiality analysis under both *Agurs* and *Alcorta* is the same as *Napue*. *See Hayes v. Brown*, 399 F.3d 972, 984-6 (9th Cir. 2005).

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 6

disclosed, there is a reasonable probability that the result of the trial would have been different. As the Government states, although it relied on "Loren Berry's testimony–the veracity of which was roundly attacked on cross examination–it was by no means exclusively, heavily, or significantly relied upon by the United States in proving the charges against [Mr. Barbee]" (ECF No. 368 at 12). The Government continues:

> [Loren] Berry's testimony cannot be viewed in isolation. The United States presented the jury with an enormous amount of evidence against the Movant and his co-conspirators. As noted above, during the retrial the United States called approximately 100 witnesses and introduced nearly 500 exhibits. Loren Berry's testimony was only a small piece of evidence related to the Movant's involvement in the charged conduct and plainly not the "crux" of the evidence or the case against the Movant and his co-conspirators. Indeed, Loren Berry's testimony was fully unrelated to the facts relating to, for example, the circumstances of the Movant's arrest, the evidence seized at the time of his arrest, the Movant's physical description matching that of the "lobby robber", and the jeans worn by that robber being the jeans seized from the Movant's home.

ECF No. 368 at 13. The Court notes that in addressing co-Defendant Robert Berry's post-conviction Motion, the Ninth Circuit addressed the evidence against Robert Berry, Mr. Barbee and their co-Defendant Verne Merrell, concluding that "significant circumstantial evidence connected the defendants to the robberies and bombings." *Id.* at 1043. The Ninth Circuit discussed some of the evidence in detail, including, in part:

> On October 7, 1996, [Federal Officers] watched [Robert] Berry travel with Barbee and Merrell from Sandpoint to Portland, Oregon. In Portland, the three parked near a U.S. Bank and waited for it to open. The bank, on alert from the FBI, remained closed. After waiting outside the bank for 20 to 30 minutes, the three men left and drove to Union Gap, Washington, where they were arrested when they stopped to refuel.
>
> Each of the defendants had been driving a separate vehicle at the time they were arrested, two of which were stolen. Inside these vehicles the FBI found a number of firearms, grenades, and ammunition. The FBI also found copies of a letter addressed to "the USurer Bank," written in the same style as the letters left behind in the other robberies. It was later learned that the defendants had mailed copies of this letter to *The Spokesman Review*, the *Oregonian*, and others.

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 7

1       Searches of the three defendants' residences revealed numerous other items that
2   were potentially connected to the robberies. For example, Barbee's home
    contained Coleman propane canisters. Identical canisters had been found in a
3   failed incendiary device left behind in the van used for the July 12 robbery. The
    FBI also found jeans in Barbee's bedroom that appeared to match jeans worn by
4   one of the robbers in the April 1 robbery. And, in the headboard to Barbee's bed,
    they found a book entitled *Vigilantes of Christendom: The Story of the Phineas*
5   *Priesthood*.

6       In Merrell's home, the FBI found a stun gun that matched one carried by one of
    the robbers in the July 12 robbery, as shown by a security video. They also
7   found fuses in Merrell's van that were consistent with the fuses used in the pipe
    bombs. In addition, witnesses identified Merrell as the driver of the van in both
8   the April 1 and July 12 robberies. Finally, files found on Merrell's home
    computer held contents substantially similar to the contents of letters left at U.S.
9   Bank and outside *The Spokesman Review* office.

10  *Id.* at 1034-5.

11      The Court has reviewed the trial transcript, its notes of the trial and recalled
12  the testimony and exhibits received.  As the Government points out, Loren Berry's testi-
13  mony  relating to Mr. Barbee was limited.  He testified that he knew Mr. Barbee; that
14  he found Mr. Barbee to be honest in his dealings; that he observed Mr. Barbee painting
15  a telephone test handset; that he observed Mr. Barbee with angle irons and blackening
16  out letters on a pair of ski goggles; that he didn't recall Mr. Barbee making any statements
17  about his religious beliefs, though he did remember Mr. Barbee reading from a Bible
18  during a camping trip; and that Mr. Barbee had pointed to a newspaper article about the
19  bank robberies and bombing and said that Brian Ratigan, a fellow bombing participant,
20  was a good guy, but slipped getting in or out of the van.  It is also notable that the
21  cross-examination of Loren Berry was potent.  On cross, Loren Berry admitted that he had
22  been regularly dishonest and was an alcoholic.  The jury was also aware that there were
23  criminal charges pending against Loren Berry and that he had been paid witness fees by the
24  Government.

25      There was substantial evidence against Mr. Barbee and the other Defendants that
26  did not stem from Loren Berry's testimony.  Mr. Barbee's involvement in the charged

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 8

conduct was supported by the testimony of many witnesses and exhibits, with the following evidence appearing particularly probative on the issue of guilt. First, as mentioned above, he was arrested with his two co-Defendants on October 8, 1996, as he returned from a round trip from Sandpoint, Idaho, to a U.S. Bank in Portland, Oregon. The three vehicles driven by the three co-defendants had survival gear, an M-16 gun, flack jackets, and grenades. The three men had disguises similar to those used in the prior two charged bank robberies that included goggles and latex gloves. Mr. Barbee admitted that one of the vehicles, the van, had been stolen. Stolen vans had also been used in the charged bank robberies. Defendants testified that the trip to the Portland bank was merely to leave letters and was a publicity stunt. Robert Berry testified that he was going to run into the bank and leave a letter while Mr. Barbee held the door and released a gas grenade, and Mr. Merrell created a diversion. The explanation was not credible given the distance they traveled and the significant preparation that they engaged in prior to the trip.

Second, co-Defendant Robert Berry possessed three types of weapons (Benelli shotgun, Ruger Vaquero revolver and Winchester pump shotgun) identified in the photographs of the bank robberies, according to the testimony of three witnesses besides Loren Berry: Chris Davidson (confidential witness), Donald Blaese (Robert Berry's landlord) and Brad Day (friend of Robert Berry's son). Mr. Davidson testified that Robert Berry gave him the Winchester to sell after the July 12, 1996, robbery. Robert Berry retrieved the gun and admitted at trial to telling his son to get rid of the Winchester while he was in jail. Just because the Benelli shotgun and Rugar Vaquero revolver were not found during the subsequent execution of the search warrants does not erase the fact that Robert Berry possessed weapons similar to those weapons identified in the bank robberies.

Third, parts of letters found on co-Defendant Merrell's computer were similar to letters left at the crime scenes. Also, the letter carried by the Defendants on October 8, 1996, was similar in content and was on Merrell's computer and could have been printed

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 9

on Merrell's printer.  A common thread throughout the trial testimony was the three co-Defendants' disdain for "usery," which was punishable by death; opposition to abortion, which was also a capital crime; their use of the name "Yahweh" for God, whose laws were superior to the laws of the United States; and reference to the Phineas priesthood.  Many similar references appeared in the letters left at the crime scenes and mailed to the victims after the crimes.  All three co-Defendants testified about their sense that the government was out of control after the events at Ruby Ridge and Waco and that they were waging a war against evil which justified stealing vehicles from corporations.  All three were identified as being pictured in the "Ragged Edge" article published by *The Spokesman Review*.  Robert Berry admitted he had stopped paying taxes, had obtained false identification and identified "safe houses."

Fourth, the testimony of  Mr. Davidson implicated Mr. Barbee, Robert Berry and Mr. Merrell.  Mr. Barbee and Robert Berry each made many statements to Davidson that revealed their interest in, and knowledge of, the charged conduct.  A day or two before the July 12 bank robbery Mr. Barbee told Davidson to watch the news.  After the July 12 bank robbery Robert Berry told Davidson that he had burned the ponchos that Davidson had sold them.  Mr. Barbee and Robert Berry separately told Davidson that they had burned the M65 parkas that he had sold them.  When viewing the surveillance photos of the bank robberies, Davidson recognized the ponchos and parkas worn by the bombers as the same style of ponchos and M65 parkas that he had sold the Defendants.  Additionally, Robert Berry told Davidson about recon that was done on the US Bank in Oregon and how a small group of people could bring them to their knees.  At trial, counsel for the co-Defendants attempted to impeach Davidson:  Mr. Davidson dealt in military surplus which raised some questions and he was interested in the reward.  Still, some details of his testimony were corroborated by other witnesses and even by the Defendants themselves, which enhanced Mr. Davidson's credibility.

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 10

Fifth, the height and weight of the teller robber during both bank robberies matched Robert Berry's height and weight, and the height and weight of the lobby robber during both robberies matched Mr. Barbee's height and weight. The physical descriptions were also consistent with the two individuals who placed the bomb at Planned Parenthood. Bank employees testified that the two robberies were very similar and the teller who was robbed twice was 99.99% sure that the teller robber was the same person with a similar black revolver used during both robberies. Co-Defendant Merrell was identified by several witnesses as the driver of the van when both *The Spokesman Review* and Planned Parenthood were bombed. He also met the description of the getaway driver after the first bank robbery.

Sixth, the April 1, 1996, bank robbery resulted in a loss of $72,000. All of the Defendants took trips in that timeframe: Mr. Merrell to Colorado on a road trip, Mr. Barbee and family to Florida by airline, and Robert Berry and family to Michigan, also on a road trip. Robert Berry gave his brother Loren $800 in cash in $20 bills during that Michigan trip. Robert Berry also moved his family out of his shop and into a $750 per month rental home when he returned from Michigan, paying his rent in cash. While there was no evidence of flagrant spending, it did appear that cash seemed in better supply than expected given the fact that in 1996 Robert Berry admitted he had lost interest in the repair shop business and did just enough to get by.

The co-Defendants also presented testimony from one person, Pat Thoren, who stated the stolen van used in the first bank robbery was observed on March 29, 1996, in Moses Lake with three people in it that did not match the physical description of the Defendants. Another witness, Andy Burson, at the drive-up window of the bank on July 12, 1996, saw the driver of the van for 5 to 10 seconds and thought he had a dark brown beard. Still, the evidence weighed heavily toward a finding of Defendants' guilt on the charged conduct.

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 11

**CONCLUSION**

Mr. Barbee's new Motion, under Rule 33, is untimely.  Assuming, *arguendo*, his claims could be construed as § 2255 claims, they are still untimely.  Assuming, *arguendo,* that his claims are timely § 2255 claims, they are immaterial under both a *Napue* and *Brady* materiality analysis.  First, considering the alleged *Napue* violations collectively, the Court concludes that there is not any reasonable likelihood that the allegedly false testimony could have affected the judgment of the jury.  Second, considering all of the alleged *Napue* and *Brady* violations collectively, the Court concludes there is not a reasonable probability that the result of the proceeding would have been different.  Mr. Barbee received a trial that resulted in a verdict worthy of confidence.

**CERTIFICATE OF APPEALABILITY**

An appeal of this Order may not be taken unless this Court or a Circuit Justice issues a certificate of appealability, finding that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires a showing that "reasonable jurists would find the district Court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a claim is dismissed on procedural grounds the Court must determine whether

> jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack*, 120 S. Ct. at 1604.  A certificate of appealability should not be granted unless both components, one directed at the underlying constitutional claims, and the second directed at the court's procedural holding, are satisfied.  *Id.*  The Court may address either the constitutional or procedural issue first.  *Id.*  Based on the Court's preceding analysis, the Court concludes:  (1) that the Movant has failed to make a substantial showing of a denial of a constitutional right, and (2) that jurists of reason would not find it debatable whether

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 12

1    the Court was correct in any substantive or procedural ruling. Thus a certificate of
2    appealability should not issue. Accordingly,

3        **IT IS ORDERED** that Mr. Barbee's Motion to Vacate, Set Aside, or Correct Sentence
4    under 28 U.S.C. § 2255, filed January 9, 2013, **ECF No. 363**, is **DENIED**.

5        The District Court Executive is directed to:

6    •   File this Order and provide copies to pro se Movant and to the United States
7        Attorney in Spokane, Washington;

8    •   Inform the Ninth Circuit Court of Appeals that if the Movant files a Notice of
9        Appeal that a certificate of appealability is **DENIED**; and

10   •   **CLOSE** the corresponding civil file, **CV-13-0025-WFN**.

11       **DATED** this 18th day of June, 2013.

12

13                                    s/ Wm. Fremming Nielsen
                                      _____
14   06-13-13                         WM. FREMMING NIELSEN
                                      SENIOR UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 - 13