Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Joseph H. Harrington
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT

FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:96-CR-00258-WFN |
| Plaintiff, | |
| vs. | United States' Sentencing Memorandum |
| CHARLES HARRISON BARBEE, | |
| Defendant. | |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Joseph H. Harrington, Assistant United States Attorney for the Eastern District of Washington, hereby submits the United States' Sentencing Memorandum.

## INTRODUCTION

On June 10, 2022, the Ninth Circuit issued a divided opinion vacating the sentences imposed on the Defendant at a resentencing following the grant of relief under 28 U.S.C. § 2255 and remanding for resentencing. *United States v. Merrell*, 37 F.4th 571 (9th Cir. 2022).

United States' Sentencing Memorandum – 1

As this Court is well aware, the Defendant and his three co-conspirators were members of a domestic extremist group that terrorized Spokane, Washington, in 1996. They detonated bombs at a newspaper and a Planned Parenthood clinic and carried out armed bank robberies. They were convicted of multiple offenses and, in 1997, were sentenced to total terms that included mandatory sentences of life imprisonment. The Defendant and the three confederates were still in prison serving those sentences in December 2018, when Congress enacted the First Step Act. That Act's changes to federal firearms and drug statutes apply to offenses that predate the Act only if "a sentence . . . has not been imposed" on the Defendant "as of" the "date" of the Act's passage.[1]

---

[1]     The United States argued earlier there is solid textual support for this Court to conclude that Section 403 of the Act – which applies the Act's statutory-minimum reductions under 18 U.S.C. 924(c) to cases in which "a sentence for the offense has not been imposed" by the date of the Act's enactment, First Step Act § 403(b) -- does not apply to a prisoner whose sentence is vacated on collateral review after the First Step Act's enactment.

Since then, however, the Department of Justice changed the government's position regarding the issue, now interpreting Sections 401 and 403 of the Act to apply retroactively to an offender who is sentenced, but whose pertinent sentence is later vacated and who is resentenced after the date of Act's enactment. *Compare United States v. Jackson,* 995 F.3d 522 (6th Cir. 2021) *with United States v. Henry,* 983 F.3d 214 (6th Cir. 2020) (pre-enactment vacatur); *United States v.*

The divided Ninth Circuit panel in this case held that the Defendant was entitled to the benefit of the First Step Act at re-sentencings that took place in late 2020. That was so, the panel majority reasoned, because this Court's supposed vacatur of the Defendant's sentences in proceedings conducted almost two years after the Act's passage rendered their prior sentences a nullity, and Congress did not intend the phrase "a sentence" in Section 403(b) of the Act to reach vacated sentences.[2]

On resentencing, the Defendant faces mandatory consecutive sentences of 30 and 5 years for Counts of convictions S5 and S8 respectively, in addition to a Guidelines Sentence for the remaining counts of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

_____

*Uriarte,* 975 F.3d 596 (7th Cir. 2020) (en banc) (pre-enactment vacatur); *United States v. Mitchell,* 38 F.4th 382 (3d Cir. 2022) (post-enactment vacatur).

[2]      In Judge Boggs' dissenting opinion reasoned that the panel majority's construction of Section 403(b) is erroneous and cannot be reconciled with the statute's language or structure. The panel announced a rule that turned on the vacatur of a sentence in a case where this Court vacated two of each defendant's multiple convictions, but never entered orders vacating the <u>sentences</u>. The panel drew support from case law governing sentences vacated on direct appeal, while seemingly overlooking the distinct rules that apply when—as in this case—a district court remedies an unlawful conviction under 28 U.S.C. § 2255.

United States' Sentencing Memorandum – 3

The Defendant and his co-conspirators were adherents of a white-supremacist ideology (the Phineas Priesthood) who perpetrated a horrific wave of violent crimes in Spokane, Washington, in 1996. On April 1, 1996, the defendants drove a stolen van to a local newspaper office, detonated a pipe bomb in a rear stairwell of the building, and left an ominous written message. *See generally* PSIR ¶ 21-47. [3] That same day, they donned ski masks and committed a full takeover robbery of a local bank. They brandished a firearm, got $72,000 from a teller, and ignited a pipe bomb on the counter before leaving the building while shouting anti-government statements. *Id.* They again left behind written materials containing Phineas Priesthood messaging.

The Defendant and his co-conspirators continued terrorizing the community two months later. They drove in a stolen van to a Planned Parenthood Clinic in Spokane, where two of the conspirators -- dressed in face masks and camouflage, and carrying firearms -- placed a pipe bomb at the clinic. The bomb soon exploded, causing extensive damage. *See* PSIR ¶¶ 31-32. The Defendants then went to the same Spokane bank they had robbed in April, entered the building armed and wearing military-style

---

[3]     Of note, information provided in the updated PSIR was derived from the original PSIR prepared with italicized updates from a December 29, 2020 telephonic interview of the Defendant. *Cf. e.g.* Part C, Offender Characteristics, ¶54.

United States' Sentencing Memorandum – 4

parkas, and used the same method to rob the bank of $32,000. In the following months, the Defendants cased a bank to rob in Portland, Oregon, and sent threatening, religiously themed messages to both the local newspaper in Spokane and U.S. Bank. At the time of the Defendants' arrest in October 1996, law enforcement found in their car multiple firearms (including a machinegun), destructive devices, and hundreds of rounds of armor-piercing ammunition.

After two jury trials, Defendants were convicted of, *inter alia*, two counts of bank robbery, in violation of 18 U.S.C. § 2113; two counts of arson, in violation of 18 U.S.C. § 844(i); and four corresponding violations of 18 U.S.C. § 924(c), which criminalized using a firearm—including a destructive device—in relation to a crime of violence. Section 924(c) additionally provides for mandatory consecutive sentences: at the time of the defendants' crimes, it required a minimum five-year sentence for use of a firearm and a minimum term of 30 years for using a destructive device in relation to the predicate violent crime. Those penalties increased to 20 years and life, respectively, in the case of a "second or subsequent conviction" under Section 924(c), including when a defendant's second Section 924(c) conviction occurred in the same trial as the first. *See Deal v. United States*, 508 U.S. 129 (1993).

Applying that statutory framework, this Court sentenced the Defendants to total terms of life imprisonment that included multiple, consecutive sentences for the

Section 924(c) violations: 30 years on Count 3, which involved use of a destructive device; consecutive life terms on Counts 5 and 7 (which also involved destructive devices); and a consecutive 20-year term on Count 9 (for use of a firearm). In 1999, the Ninth Circuit affirmed the convictions and sentences in an unpublished opinion.

In 2016, the Defendants moved to vacate their convictions and sentences under 28 U.S.C. § 2255. The district court held the petitions in abeyance while substantial litigation over Section 924(c) and similar statutes played out. The Defendants eventually added an argument that, in light of *Davis v. United States*, 139 S. Ct. 2319 (2019), their arson convictions no longer qualified as Section 924(c) predicates and that two of their convictions (on Counts 3 and 7) had to be vacated. In early 2020, after the government conceded that relief was warranted under *Davis*, this Court granted, in part, the 28 U.S.C. § 2255 petitions. It agreed to vacate the Section 924(c) convictions on Counts 3 and 7 but left all remaining convictions intact, including those on Counts 5 and 9 -- the latter involving the use of a destructive device in relation to a bank robbery, and the former the use of a firearm during a bank robbery. This Court did not, however, vacate the Defendants' sentences. *See* ECF 407, The Court ordered preparation of new Presentence Investigations Reports and set the cases for resentencing.

By the time of the order granting § 2255 relief, Congress had passed the First Step Act of 2018. Section 403(a) of that Act amended 18 U.S.C. § 924(c) to

eliminate the enhanced penalties formerly applicable when a defendant's "second or subsequent" conviction arises in the same trial as his first conviction. This Court declined to apply Section 403(a) at the Defendants' re-sentencings. It thus determined that the Defendants were subject to 30-year and 20-year terms on their two remaining Section 924(c) convictions (Counts 5 and 9) and ran the sentences on those counts consecutive to each other and to the sentences on other counts, for total terms of 660 months for the Defendant. The Defendant sought review by the Ninth Circuit, which ultimately vacated the sentence and remanded for resentencing.

The following is a summary chart, post-*Davis* vacature / post-appellate-vacature remand (November 2022):

| Count | Description Statute | Concurrent Sentence | Consecutive Sentence |
|---|---|---|---|
| 1 | Conspiracy 18 U.S.C. § 371 | 60 mos. | |
| 2 | Destruction of a Building Used in Interstate Commerce 18 U.S.C. §§ 844(i) & 2 | 60 mos. | |
| 3 VACATED | ~~Use of a Firearm During a Crime of Violence 18 U.S.C. §§ 924(c) & 2~~ | | ~~360 mos.~~ |
| 4 | Armed Bank Robbery 18 U.S.C. §§ 2113(a), (d) & 2 | 60 mos. | |
| 5 | Use of a Firearm (pipe bomb) During a Crime of Violence 18 U.S.C. §§ 924(c) & 2 | | 360 mos. |

| | | | |
|---|---|---|---|
| 6 | Destruction of a Building Used in Interstate Commerce 18 U.S.C. §§ 844(i) & 2 | 60 mos. | |
| ~~7~~ VACATED | ~~Use of a Firearm (pipe bomb) During a Crime of Violence 18 U.S.C. §§ 924(c) & 2~~ | | ~~life~~ |
| 8 | Armed Bank Robbery 18 U.S.C. §§ 2113(a),(d) & 2 | 60 mos. | |
| 9 | Use of a Firearm During a Crime of Violence 18 U.S.C. §§ 924(c) & 2 | | ~~240 mos.~~ VACATED 60 mos. |
| 10 | Interstate Transportation of a Stolen Motor Vehicle 18 U.S.C. §§ 2113 | 60 mos. | |
| 11 | Interstate Transportation of a Stolen Motor Vehicle 18 U.S.C. §§ 2113 | 60 mos. | |
| 12 | Possession of Unregistered Grenades 26 U.S.C. § 5861(d) | 60 mos. | |
| Total Concurrent Sentence (Counts 1, 2, 4, 6, 8, 10, 11, 12) | | 60 mos. | |
| Total Consecutive Sentence (Counts 5 and 9) | | | 420 mos. |

Other than a change to the aggregate sentence -- 480 month reduced from 660 months – the remand will result in a minor change to this Court's imposition a three-year term of Supervised Release for Counts 1, 2, 6, 10, 11, and 12 and a five-year

term for Counts 4, 5, 8, and 9. *Cf.* Judgment, ECF 451. Now, Count 9 is a Class C felony subject to a maximum three-year, not five-year term.

The PSIR appears to be complete and accurate.

## DISCUSSION

While the Defendant has had a sentence imposed, when as here, a Court unbundles the original sentencing package and imposes a renewed sentencing package the general sentencing procedure is instructive. That is, a court engages in a two-step process. The first step requires a court to calculate properly the advisory Guidelines sentencing range. *See United States v. Cantrell*, 433 F.3d 1269, 1279-80 (9th Cir. 2006). The second step requires a sentencing court to impose a "reasonable" sentence in light of all the factors under 18 U.S.C. § 3553(a). *See United States v. Marcial-Santiago*, 447 F.3d 715, 717 (9th Cir. 2006).[4] In addition, a sentencing court must ensure restitution to the victims who have been directly and proximately harmed as a result of the Defendant's criminal conduct. *See generally* 18 U.S.C. § 3663A.

//

---

[4] A wide range of sentences may be deemed reasonable. *See United States v. Mohamed,* 459 F.3d 979, 989 (9th Cir. 2006) ("reasonableness is a range, not a point." (quoting *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)).

United States' Sentencing Memorandum – 9

## I. Sentencing Guidelines and 3553 Factors

The Ninth Circuit has set forth a basic framework which the district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

> (2) Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties. Courts may not presume that the guidelines range is reasonable. Nor should the guidelines factors be given more or less weight than any other. They are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

> (3) If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

> (4) Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

### 1. United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Here, the PSIR accurately represents that the Defendant faces mandatory consecutive sentences of 30 and 5 years for Counts of convictions S5 and S8 respectively (PSIR ¶¶ 179, 182), in addition to a Guidelines

United States' Sentencing Memorandum – 10

sentencing range of 97 to 121 months (PSIR ¶ 188). The PSIR correctly calculated the defendant's total offense level as being 30. The PSIR correctly calculated the defendant's criminal history as Category I.[5] Based upon a total offense level of 30 and a criminal history category of I, the advisory guideline imprisonment range is 97-121 months. PSR ¶ 188.

The United States recommends neither a departure from the advisory guideline range or a recommending variance

2. <u>18 U.S.C. § 3553(a) Factors</u>

When fashioning an appropriate sentence, a court must not only consider the advisory Guidelines, but must also consider the factors identified in 18 U.S.C. § 3553(a).[6] The factors a sentencing court must consider are the nature and circumstances of the offense and the history and characteristics of the defendant. The sentencing court must also consider, *inter alia*, the need for the sentence imposed to: reflect the seriousness of the offense; promote respect for the law;

---

[5]     *But see* PRIR p. 19, n.2 referencing the issue of whether the Defendant was under court supervision at the time of the January, 2021 resentencing hearing.

[6]     "This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence." *See United States v. Knows His Gun*, 438 F.3d 913, 918 (9th Cir.2006). *See also Rita v. United States*, 551 U.S.338 , 127 S.Ct. 2456, 2462 (2007).

United States' Sentencing Memorandum – 11

provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; provide the defendant with needed educational training, medical care, or other correctional treatment. A sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

  a. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The nature and circumstances of the offenses – bombing of the Spokesman Review facility and a Planned Parenthood and armed robberies of the U.S. Bank – were not only gravely dangerous but ideologically motivated to instill terror in the Spokane metropolitan area. These acts of terror, committed during afternoon business hours, created alarming risk of serious injury or death. Indeed, killing at the Planned Parenthood was the Defendant's intent as exhibited by the dangerousness of the explosive device used but the subsequent letter mailed to the Director.

  b. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

The Defendant has been convicted of crimes amounting to acts of terror. The victim impact reached far beyond just those who were directly and violently

confronted by the Defendant.   Rather, the whole of Spokane (and by good police work not Portland) was thrust into a spring/summer of fear in 1996.

The seriousness of the Defendant's conduct cannot be understated.  There can be no doubt or hesitation in acknowledging that a severe punishment is right and just.

     c.   <ins>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</ins>

Justifying and carrying out acts of violence, like bombings and robberies, based on twisted interpretations of the Old Testament, as the Defendant and his Phineas Priest brotherhood did, must be swiftly addressed and punishment meted out.  Any sentence imposed for such conduct will deter other like-minded ideologues only if it is severe.

     d.   <ins>The need for the sentence imposed to protect the public from further crimes of Defendant.</ins>

The record of the Defendant's violent crime, the means and manner in which they were carried out, involved conduct that occurred over 20 years ago.  It appears the Defendant has taken advantage of the opportunities and resources available to him while incarcerated with the BOP.  The clear danger he previously presented to the public appears to have diminished.

     e.   <ins>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</ins>

The United States is unaware of any such need.

     f.   <u>The kinds of sentences available.</u>

For the counts of conviction in the instant matter, imprisonment is appropriate.

     g.   <u>The kind of sentence contemplated by the Sentencing Guidelines.</u>

The Sentencing Guidelines contemplates a term of imprisonment.

     h.   <u>Any pertinent policy statements issued by the Sentencing Commission.</u>

There appear to be no directly salient policy statements in this case.

     i.   <u>The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.</u>

In this case, there is no disparity of sentences among the similarly-situated co-defendants. Each faced the same or similar Guidelines calculations and §3553 factors.

## II.   Restitution, Fines, and Special Penalty Assessments

The United States submits that, as noted in the PSR, restitution must be ordered. The amount is set forth in the PSIR at ¶ 247, less any amount already paid as applicable to the victim-entities identified in the PSR. The Court must impose the Special Penalty Assessments for each count of conviction. The United States take no position with respect to any fine, but notes the Defendant has current ability to pay a fine.

## III.   United States' Sentencing Recommendation

The United States submits that this Court can appropriately fashion a re-bundled sentence by imposing statutory sentence of: thirty years for Count 5; five years for Count 9 each to run consecutive to each other and to the remaining counts

United States' Sentencing Memorandum – 14

of conviction, and a sentence of 60 -120 months for the other counts of conviction. The Court should impose a 5-year term of Supervised Release subject to the proposed conditions set forth in the PSR, impose restitution, and assess the mandatory special penalties.

## CONCLUSION

Based on the foregoing, the United States respectfully submits that a re-bundled 40 to 45-year term of imprisonment, a 5-year term of supervised release, and restitution in the amount of $214,340.83, less any amount already paid to the victims, is a "reasonable" sentence under the facts and circumstances of this case and not greater than necessary to promote the purpose and policy of the Federal Sentencing Act, 18 U.S.C. § 3553(a).

Respectfully submitted:  November 1, 2022.

Vanessa R. Waldref
United States Attorney

*s/ Joseph H. Harrington*
Joseph H. Harrrington
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2022, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to defense counsel of record.

*s/ Joseph H. Harrington*
Joseph H. Harrrington
Assistant United States Attorney